No. 84,522

STATE OF KANSAS, *Appellee*, v. REYNALDO ALVIDREZ, *Appellant*.

(20 P.3d 1264)

Opinion filed April 20, 2001.

*Virginia A. Girard-Brady*, of Lawrence, argued the cause and was on the brief for appellant.

*Jae M. Lee*, assistant county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is a direct appeal by Reynaldo Alvidrez from convictions of premeditated first-degree murder, aggravated burglary of a dwelling, and criminal damage to property. Alvidrez challenges the trial court's denial of his motion to suppress, admission of evidence that he "always carried a gun," and the sufficiency of the evidence to establish that the killing was premeditated.

The State's evidence centered on the eyewitness accounts of three individuals, Maria Rodriguez and Manuel and Juana Solorzanos. Each testified they saw Alvidrez shoot and kill Ralph Rodriguez. Maria identified Alvidrez, with whom she had had a relationship while separated from her husband, as approaching her residence with something in his hand during the early morning hours of February 22, 1999. He kicked in a wooden kitchen door, causing Maria to run to a daughter's room and crawl out of a window. She went upstairs to the home of her neighbors, the Solorzanos.

From there, with the three of them looking out a window, they saw Alvidrez go back to his car. Ralph Rodriguez, Maria's husband,

drove into a nearby parking area and Alvidrez drove his car up to the side of Mr. Rodriguez' vehicle. Alvidrez waited while Mr. Rodriguez exited from the passenger side of the car and then put a gun to Mr. Rodriguez' head and shot him. Maria testified the lighting was good and she was absolutely certain that it was Alvidrez who killed her husband. She further testified that Alvidrez had previously threatened to kill her, her daughters, and her husband if she did not stay with him.

The testimony of the Solorzanos was identical to that of Maria. Both stated they saw Alvidrez leave the residence, get into his car, and pull his vehicle up next to Mr. Rodriguez' car, and that when Mr. Rodriguez exited the vehicle, Alvidrez shot him in the head.

The evidence supporting the eyewitness testimony was that Deputy Harper stopped Alvidrez the morning of the shooting near Jetmore after noticing blood on the driver's side door and a driver's side window broken out. K.B.I. tests revealed that the blood was not Alvidrez' but could have been Mr. Rodriguez'. A handgun was found in the area where Alvidrez had stopped. The fingerprint expert for the K.B.I. testified that the fingerprint found on the magazine of the handgun was that of Alvidrez. A fire mark and tool mark inspector for the K.B.I. testified that a bullet cartridge found at the scene was an exact match to the gun found. Further, it was testified that broken glass found at the crime scene matched that found in Alvidrez' car.

Alvidrez testified in his own behalf and contended that he had been accosted in Garden City by two men at gunpoint and forced to drive to Dodge City, where he was told to take them to Maria Rodriguez' house. He contended he drove in circles and when he stopped to get gas was able to attempt a call to the police from a pay phone. He contended the purpose of the call was to warn the police about what was going to happen. The two men said their desire to go to the Rodriguez residence had to do with drug transactions. Once there, Alvidrez claimed the two men forced him into the house and that after he saw Maria's daughters, the three of them left. When Mr. Rodriguez pulled up, the two of them ordered Alvidrez to kill Mr. Rodriguez. He refused, and one of the other men shot Mr. Rodriguez. He was ordered to drive away, and the

men eventually got into another vehicle but followed him toward Jetmore.

The three eyewitnesses said there were no other individuals in the parking lot when Alvidrez shot and killed Mr. Rodriguez.

Alvidrez' first issue on appeal is his contention that his motion to suppress statements made during an interview with an investigating officer was erroneously denied.

Alvidrez was transported from Jetmore to Dodge City on the morning of his arrest where he was interviewed by Officer George. He contends statements made to Officer George while in custody and after he had invoked his right to remain silent were inadmissible due to no valid and voluntary waiver of his *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), rights. After a full evidentiary hearing, the trial court denied the motion to suppress.

When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision " 'by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review.' " *State v. Toothman,* 267 Kan. 412, 416, 985 P.2d 701 (1999) (quoting *State v. DeMarco,* 263 Kan. 727, Syl. ¶ 1, 952 P.2d 1276 [1998]).

The testimony at the suppression hearing showed that after being given and having signed a *Miranda* rights form, Alvidrez stated he wished to remain silent. A preliminary breath test was requested and agreed to by Alvidrez, which showed no alcohol in his system. When the officer returned, he repeated several preliminary questions relating to employment records and physical characteristics, which were preparatory to holding Alvidrez in custody. Alvidrez, in response to a question of whether he wanted to talk with the officer, stated: "I'd rather talk to a lawyer." Alvidrez was asked if he knew why he had been arrested, and when he said he did not, he was told he was a suspect in a shooting.

A videotape had been running and was apparently shut off to allow Alvidrez to remove his clothes because when it resumed it

showed him in a orange jumpsuit sitting in the corner. Officer George was removing a piece of paper from the floor and asked Alvidrez if he had glass in his hair. He then said to Alvidrez, "Before we started taking your clothes off, you told me that we missed two guys. . . . What did you mean by that?"

From that point on, Alvidrez recounted a story substantially identical to that which he gave at trial. Some questions were asked by the officer but only when the defendant made an ambiguous statement or left out details.

The record clearly shows there was no attempt to intimidate, no threats were made, no coercive statements were made, and the interviewer only attempted to determine names of individuals mentioned by Alvidrez and where they might be located. The trial court found that while Alvidrez appeared tired, he was allowed to leave the interview to go the restroom and there was nothing coercive about the interview. After reviewing the testimony and the interview as depicted in the videotape, the court found that the statements were not coerced or given involuntarily and that the police officers did not proceed improperly after Alvidrez had requested an opportunity to speak with an attorney.

The trial court correctly denied the motion to suppress, although alternative grounds subsequently exist to support its decision. The State did not present Alvidrez' statement or call Officer George to the stand in its case in chief. The precise story given to Officer George was substantially what Alvidrez testified to at the trial, and while he did place himself at the scene, he related a scenario which was exculpatory and blamed third parties for Mr. Rodriguez' death.

In this case, the statements only became a part of the record after Alvidrez testified. A copy of the interview tape was not made a part of the evidentiary record at the trial, and no transcript of the interview was given to the jury.

Even if Alvidrez' *Miranda* rights were violated (which we do not hold them to be), his statements could have been used for impeachment purposes under the holding of *Harris v. New York*, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971), which was followed by our Kansas case of *State v. Graham*, 244 Kan. 194, 201, 768 P.2d 259 (1989).

The argument made in the motion to suppress was that the statements were taken after Alvidrez had invoked his right to remain silent or to talk to an attorney, but for the first time on appeal he contends the statements were involuntary. This is contrary to the record and, in addition, was an issue not presented to the trial court; thus, we will not consider it on appeal. See *State v. Smith*, 268 Kan. 222, 243, 993 P.2d 1213 (1999).

The worst characterization that can be given of circumstances surrounding the interview is that this was "creative conversation." However, when a statement is made that parties responsible for a crime were being "missed," an area of concern was opened for which it was not only proper but required that law enforcement pursue. This issue does not require a new trial for two reasons. The trial court properly denied the motion to suppress, and the statements were introduced into the trial by Alvidrez' own testimony.

Alvidrez next contends that evidence that he "always carried a gun" was improperly admitted at his trial.

Alvidrez filed a motion in limine requesting that Maria Rodriguez be prohibited from testifying at trial that he always carried a gun. He contends he properly reserved the issue by asking for a continuing objection with respect to the admission; however, the record reflects that the precise testimony was the result of Maria's cross-examination.

"When a motion to suppress is denied, the moving party must object to the evidence at trial to preserve the issue on appeal." *State v. Cellier*, 263 Kan. 54, Syl. ¶ 2, 948 P.2d 616 (1997). We have also held that the appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred. See *State v. Davis*, 256 Kan. 1, 19, 883 P.2d 735 (1994).

Maria's testimony was properly admitted to show that Alvidrez had threatened her and wanted her to get back with him. The statement concerning him always having a gun came out on cross-examination where defense counsel posed this question: "But, you never saw a gun and he never threatened you with a gun?" In response to this question, Maria said, "He always has a gun, always." The defense counsel made no effort to strike the answer as nonresponsive, and through a series of questions, he did show that

while Alvidrez had threatened Maria he had never done so with a gun.

After this cross-examination, the prosecution on redirect essentially repeated the cross-examination testimony without any objection, and it was repeated again by Maria on recross-examination.

It is not proper to attempt to make a continuing objection concerning an issue and have it protect you when your own counsel allows the exact testimony to come before the court. This testimony was interjected into the trial by the questions on cross-and recross-examination. This issue is without merit.

Finally, defendant contends there was insufficient evidence to establish that he had premeditated the killing.

When reviewing sufficiency of the evidence, we must be convinced, after a review of all the evidence, viewed in the light most favorable to the prosecution, that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

In order to convict Alvidrez of first-degree murder, the State had to prove that he killed Mr. Rodriguez intentionally and with premeditation. See K.S.A. 21-3401(a); *State v. Juiliano*, 268 Kan. 89, 97, 991 P.2d 408 (1999).

Premeditation is the process of thinking about a proposed killing before engaging in the homicidal conduct. *State v. Rice*, 261 Kan. 567, 587, 932 P.2d 981 (1997). Premeditation and deliberation may be inferred from the established circumstances of the case, provided the inference is a reasonable one. In such a case, the jury has the right to make the inference. *State v. Buie*, 223 Kan. 594, 597, 575 P.2d 555 (1978).

The only fact from the record that could be contended by Alvidrez to support his argument is that Mr. Rodriguez was shot as soon as he stepped out of his car. The State cites and the record reflects numerous facts relating to premeditation. The State contends that Alvidrez threatened to kill Maria, Ralph, and their children prior to the shooting; went armed with a weapon to Maria's home; stalked and attempted to harm her prior to her escape; waited until Mr. Rodriguez exited his car, which would have taken longer than usual since he had to leave from the passenger side

because the driver's side door was not working, so he could shoot Mr. Rodriguez at close range; aimed and shot Mr. Rodriguez in the head; did not call or render aid; fled the scene; concealed the weapon; and lied in an attempt to cover up the killing. Alvidrez' fingerprints were on the magazine of the gun, giving strong evidence that he had utilized and loaded the gun.

We have on numerous occasions considered the issue of premeditation, and what we have recently said in *State v. Saleem*, 267 Kan. 100, 977 P.2d 921 (1999), is representative of the many statements we have made on the subject. When Saleem contended there was not sufficient evidence to support a finding of premeditation, we opined that "premeditation means to have thought over the matter beforehand." 267 Kan. at 104. We considered in *Saleem* numerous factors, including the use of deadly force that was not justified and the firing of the shots at close range into an area of the victim likely to be fatal. Those factors were also present in this case. We have also held that leaving the scene in the manner Alvidrez did could infer premeditation. See *Saleem*, 267 Kan. at 106.

There is adequate evidence in this case to show premeditation to support a conviction of first-degree murder.

Affirmed.