(61 P.3d 112)
No. 89,149

STATE OF KANSAS, *Appellant*, v. DEMARCO GRIFFIN, *Appellee*.

Opinion filed January 17, 2003.

*Tony Cruz*, assistant county attorney, and *Carla J. Stovall*, attorney general, for appellant.

*Linda Barnes-Pointer*, of Junction City, for appellee.

Before GERNON, P.J., KNUDSON, J., and LARSON, S.J.

LARSON, J.: This is the State's interlocutory appeal from the district court's decision granting DeMarco Griffin's motion to suppress evidence.

We reverse and remand.

Griffin was charged with felony possession of marijuana pursuant to K.S.A. 2001 Supp. 65-4105(d). In his motion to suppress evidence, he contended the search of the car in which he was a passenger was illegal because there was no reasonable and articulable suspicion that either he or the driver was involved in criminal acts. The underlying facts were developed from transcripts from a suppression and preliminary hearing before a magistrate judge that involved the driver of the car as well as Griffin.

The testimony showed that a search warrant was being executed at an apartment building in Junction City in February 2002. Ernestine Cherry occupied one apartment; a couple, Bessie Bingham and Larry Wellmaker, lived in another; an individual occupied a third; and the remaining three apartments in the building were vacant. The only other buildings on the street were businesses.

Primary testimony was provided by Sergeant Michael Life, who was part of the Drug Task Force of the Junction City Police Department. Controlled buys had been made at Cherry's apartment within the past 2 years where two prior search warrants had been executed resulting in Cherry's arrest along with the seizure of a large amount of cocaine. Bingham had previously been arrested in a different location for possession of cocaine with intent to sell and had moved to the apartment. Drug trafficking had previously been observed at the building.

On the evening in question, Kansas Bureau of Investigation (KBI) agents began surveillance on the apartment in early evening. Police vehicles were parked out of sight. Numerous individuals came to both the front and back of the apartment building, entered, stayed for a short time, and left. The KBI agents reported the high amount of activity and also that a person wearing a yellow shirt would leave the building, make contact with other persons, go back inside the building, and shortly thereafter return. Sergeant Life saw this person exchange what was believed to be cocaine for money from another person.

With this background, the officers began executing a search warrant around 10:30 p.m. Numerous officers were involved and arrested the occupants of Cherry's and Wellmaker's apartment, plus a female who drove up and stopped in the alley was arrested for possession of cocaine.

Around 11 p.m. Sergeant Life came out of the front of the apartment building. He did not see a parked car in front of the building when he went to the rear of the building. When he returned to the front of the building shortly thereafter, he saw two occupants in a parked car in front of the building. The distance between the parked car and the building was only about 30 feet. All of the businesses on the street were closed.

The area in front of the building was lit with street lights. The car was parked for only a minute, but no one exited as Sergeant Life approached the vehicle. It started to leave but the sergeant shined his light on the car, stepped in front of it, and motioned for it to stop, which it did.

Although Sergeant Life did not see the occupants of the car commit a traffic infraction, he believed they were involved in drug activity at the apartment because of the observations of earlier drug activity and the apartment was the only place they could have gone from where they were parked. Sergeant Life obtained the driver's license of the car's driver and found his name was Travis Jackson and that he had a Missouri license. When asked where he was going, Jackson said he was going to visit someone but gave a different address from where he had stopped.

When Sergeant Life looked into the car, he recognized the passenger as DeMarco Griffin. He had been involved with and seen Griffin many times previously and knew he was currently on bond for a pending drug case. He instigated a check on Jackson's driver's license and, while waiting for the response, called for another officer to have his drug canine check out the car.

Officer Oehm had gone a block or so away to get gas in his car and testified he arrived within half a minute of Sergeant Life's request with his trained drug dog, who walked around the vehicle. His dog alerted for the presence of drugs on both the driver's and passenger's side of the vehicle in which Griffin was a passenger.

After the drug dog alerted at the presence of drugs at the passenger door, Sergeant Life had Jackson exit the car. At this time, Life smelled a strong odor of burnt marijuana on Jackson and inside the car. Cocaine was found on Jackson.

Griffin was then asked to exit the vehicle. During a search of the car, marijuana cigarettes were found in a box on the passenger side of the front seat. Griffin was then arrested.

The district court held Sergeant Life did not have a reasonable and articulable suspicion for the stop and granted Griffin's motion to suppress. We conclude the court erred.

Our standard of review of suppression hearings was recently set forth in *State v. Alvidrez*, 271 Kan. 143, 145, 20 P.3d 1264 (2001), where it was said:

"When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision " 'by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review.' " [Citations omitted.]"

It has further been said that "[w]hen the facts material to a decision of the court on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which this court has unlimited review. [Citation omitted.]" *State v. Jones*, 270 Kan. 526, 527, 17 P.3d 359 (2001). The facts in this case are not in dispute.

Under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and K.S.A. 22-2402(1), an officer must have a reasonable and articulable suspicion that the seized person is committing, has committed, or is about to commit a crime. In *State v. DeMarco*, 263 Kan. 727, 734-35, 952 P.2d 1276 (1998), our Supreme Court summarized how we evaluate the presence or absence of reasonable suspicion:

"We said in *State v. Toney*, 253 Kan. 651, 656, 862 P.2d 350 (1993): 'The officer making the stop must be able to articulate the basis for his reasonable suspicion. What is reasonable is based on the totality of circumstances and is viewed in terms as understood by those versed in the field of law enforcement.' In reviewing factors advanced by the government to prove reasonable and articulable suspicion, the Tenth Circuit said in *Mendez*:
'When evaluating these factors, we judge the officer's conduct in light of common sense and ordinary human experience. [Citation omitted.] "Our task . . . is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious," [citation omitted], but to determine whether the totality of the circumstances justify the detention. [Citation omitted.] We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, [citation omitted], remembering that reasonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 . . . .' 118 F.3d at 1431.
The United States Supreme Court has described 'reasonable suspicion' as ' "a particularized and objective basis" for suspecting the person stopped of criminal activity.' *Ornelas*, 517 U.S. at 696. Something more than an unparticularized suspicion or hunch must be articulated. *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989).
"Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Both reasonable suspicion and probable cause are dependent upon the content of information possessed by the detaining authority and the information's degree of reliability. Quantity and quality are considered in the 'totality of the circumstances—the whole picture' that must be taken into account when evaluating whether there is reasonable suspicion. *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990)."

The narrow issue here is whether Sergeant Life had a reasonable and articulable suspicion that the occupants of the car were about to commit a crime. In making this determination, we said in *State v. Kirby*, 12 Kan. App. 2d 346, 353, 744 P.2d 146 (1987), *aff'd* 242

Kan. 803, 751 P.2d 1041 (1988), that "the Kansas Supreme Court has recognized that the location, time of day, previous reports of crime in the area, and furtive actions of the suspects may well justify a stop. [Citations omitted.]"

We view the overall circumstances of this stop differently than the trial court did. The trial court did not find any nexus between two individuals driving up and stopping in front of a known drug house at 11 p.m. with no other businesses in the neighborhood open and the raising of a reasonable suspicion in a trained law enforcement officer that the occupants were about to commit a crime.

We believe the facts of this case are somewhat similar to those in *Illinois v. Wardlow*, 528 U.S. 119, 145 L. Ed. 2d 570, 120 S. Ct. 673 (2000), where Wardlow attempted to flee officers in a high crime area and when caught and searched, led to the discovery of a handgun, resulting in his arrest and conviction of unlawful possession of a weapon by a felon. The United States Supreme Court reversed the Illinois Supreme Court decision that the officers acted without reasonable suspicion and stated in part: "Headlong flight— wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." 528 U.S. at 124. "Allowing officers confronted with [an unprovoked] flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." 528 U.S. at 125. It concluded that the location of Wardlow in a high crime area and his flight collectively amounted to a reasonable suspicion to justify the officers "in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further." 528 U.S. at 125. The area in question in our case had a clear and articulated history of criminal activity at the time of the stop.

In our case, the trial court's reliance on the attempted flight of the car only ignores all of the other facts utilized and known by Sergeant Life and all the other officers at the scene. Numerous persons came to and left from the apartment building where only three apartments were occupied by a total of four people; the KBI agents and Officer Life observed drug transactions at the apart-

ment building within a few hours of the car stop; the car parked at the apartment building late at night when the other businesses on the street were closed; other drug arrests and search warrants for drugs had been made at the apartment building during the previous 2 years; convicted drug offenders resided at the apartment building; an earlier stop of a vehicle behind the apartment building had resulted in a drug arrest; and it was reasonable to infer from the facts that the occupants in the car decided to leave after seeing the other uniformed officers or Sergeant Life while the car was parked in front of the apartment building.

It appears the trial court did not consider the totality of the facts known by Sergeant Life and relied upon the fact that he had not ruled out innocent behavior. Such an analysis was recently rejected by the United States Supreme Court in *United States v. Arvizu*, 534 U.S. 266, 151 L. Ed. 2d 740, 122 S. Ct. 744 (2002), where in response to the argument that the facts suggested lawful conduct it stated that a reasonable suspicion determination "need not rule out the possibility of innocent conduct." 534 U.S. at 277. The Court noted the necessity of looking at the totality of the circumstances by the reviewing court and further said: "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' [Citations omitted.]" 534 U.S. at 273.

Griffin's argument that the State stipulated that all of the facts surrounding the execution of the search warrant were not involved in the determination of reasonable and articulable suspicion is misplaced. The prosecutor did say the stop of the car was not solely based on the search warrant because neither Griffin nor the vehicle in which he was riding was listed in the search warrant. But, the State clearly relied on all of the information justifying the issuance of the search warrant and the officers' observations for the hours prior to and during the execution of the search warrant.

The canine officer appeared in an extremely timely manner while a proper *Terry* stop was being conducted. There was an absolute statutory right under K.S.A. 22-2402(1) to check Jackson's identity and story. When the canine alerted on the car, the actions

of the law enforcement officers which followed were clearly proper and justified.

We will not further repeat all the circumstances which have been previously set forth, but, under our standard of review of the totality of the known facts and activity, we hold the vehicle was properly and lawfully stopped. We hold that reasonable and articulable suspicion existed and the trial court erred in sustaining the motion to suppress.

The trial court's ruling on the motion to suppress is reversed, and this matter is remanded for further proceedings.