(181 P.3d 1258)
No. 96,597

STATE OF KANSAS, *Appellee/Cross-appellant*, v. CONNIE W. MOORE, *Appellant/Cross-appellee*.

Opinion filed April 25, 2008.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before McAnany, P.J., Caplinger and Buser, JJ.

Caplinger, J.: Connie Moore appeals his convictions and sentences for multiple methamphetamine-related offenses, and the State cross-appeals the primary sentence imposed.

Moore argues the district court erred in denying his motion to suppress evidence found in his truck and camper because (1) the initial stop of his vehicle was unlawful; (2) the scope of the stop exceeded its initial purpose; (3) the subsequent search of his vehicle was not based upon probable cause; and (4) he was under custodial interrogation when he made pre-*Miranda* statements during the traffic stop.

Moore also argues the district court abused its discretion in denying his motion for mistrial based upon an allegedly biased jury. Additionally, Moore claims the district court erred in admitting evidence of his prior methamphetamine-related convictions without analyzing the evidence under K.S.A. 60-455. And Moore asserts the district court erred in permitting a witness to testify despite the witness' violation of a sequestration order. Finally, Moore challenges his sentences, arguing the severity level of his conviction for manufacture of methamphetamine violates the identical offense doctrine.

The State cross-appeals Moore's primary sentence, claiming the district court erred in failing to sentence Moore pursuant to K.S.A. 21-4705(e).

We conclude the district court did not err in denying Moore's motion to suppress as the officer (1) properly based the initial stop on a reasonable suspicion that Moore was driving under the influence; (2) did not exceed the scope of the initial stop; and (3) had probable to cause to search Moore's vehicle after the officer detected the odor of both anhydrous ammonia and ether and observed in plain view several items used in the manufacture of methamphetamine. Additionally, the district court did not err in refusing to suppress a pre-*Miranda* statement made by Moore during the investigative stop as Moore was not in custody when the statement was made.

We further hold the district court did not abuse its discretion in denying Moore's motion for mistrial as we find no evidence to support Moore's suggestion that the jury was somehow biased against him. Regarding Moore's prior convictions for methamphetamine-related offenses, we hold the district court erred in failing to conduct an analysis of their admissibility under K.S.A. 60-455. Nevertheless, the prior conviction evidence was properly admitted as it was relevant to show Moore's knowledge and awareness of the items in the trailer, which Moore claimed were not subject to his exclusive possession and did not belong to him. Further, even if the evidence was erroneously admitted, the error was harmless in light of the overwhelming evidence of Moore's guilt as contained in the trial record. We also conclude the district court did not err in permitting a witness to testify despite the witness' alleged violation of the sequestration order, when there is no evidence any prejudice occurred as a result of the alleged violation.

Based upon our analysis of our Supreme Court's recent holding in *State v. Cooper*, 285 Kan. 964, 179 P.3d 439 (2008), we must reject Moore's challenge to his sentence. Because the elements of manufacturing methamphetamine are not identical to the elements of the possession of paraphernalia with intent to manufacture, and the jury was properly instructed as to those elements as defined by the charging documents, the two offenses are not identical for sentencing purposes.

Finally, we sustain the State's cross-appeal and reverse and remand for resentencing, as the district court erred in failing to sentence Moore to a second or subsequent K.S.A. 65-4159 conviction pursuant to K.S.A. 21-4705(e). Moore's due process challenge to the statute fails because the statute does not alter the crime's severity level classification, nor does it make proof of the prior conviction an element of the crime. Further, although the defendant's prior conviction occurred after the acts with which the defendant was charged in the instant case, the defendant was required to be sentenced as a second or subsequent offender pursuant to K.S.A. 21-4705(e) because his prior conviction occurred prior to his sentencing in the present case.

*Factual and procedural background*

On July 23, 2004, Reno County Sheriff's Deputy Jeremy Hedges was working as a part-time park ranger at Cheney Reservoir State Park (Park), a position in which he retained his law enforcement and Reno County credentials. As Hedges patrolled the Park near Heimerman Point at approximately 11 p.m. that evening, he observed a green pickup truck swerve to one side of its lane and then jerk back to the other side of the lane. The truck, driven by Moore, made this same weaving, jerking motion approximately five times, and on the last time, the truck's passenger-side tires touched the grass on the right side of the road. Deputy Hedges became suspicious that the driver of the truck, who was traveling approximately 20 miles per hour in a 30-mile-per-hour zone, might be driving under the influence (DUI).

After Moore turned right off the main road, Hedges initiated a stop of the vehicle based upon his suspicion that the driver was DUI and also on the driver's failure to signal within 100 feet of the turn. As Hedges approached the vehicle, he detected the odor of both anhydrous ammonia and ether, which Hedges knew to be associated with the manufacture of methamphetamine.

In response to Hedges' request, Moore produced an expired driver's license and began searching for his proof of insurance in the glove compartment of the truck. As Moore searched for the documentation, Deputy Hedges observed a can of Coleman fuel and two cans of starter fluid in the bed of the truck.

Moore then asked Deputy Hedges if he could get out of the truck to continue searching for his insurance. Hedges permitted him to do so after patting him down for weapons. As Moore exited the truck, Deputy Hedges observed a roll of paper towels and an open container of lithium batteries on the seat of the truck. At that point, Park Ranger Jeffrey Ostlund arrived as back-up for Hedges. Ostlund also detected the odor of anhydrous ammonia near the truck.

Hedges returned to his patrol vehicle and requested that dispatch run Moore's driver's license and check for outstanding warrants. After dispatch confirmed that the license had expired,

Hedges returned to Moore and asked him where he was going. Moore responded that he was going to his trailer which was parked at Heimerman Point.

Deputy Hedges then advised Moore that he intended to search Moore's truck. Moore responded that Hedges could not do so without a warrant. Hedges told Moore that this was not a request. After Moore began pacing and became fidgety, Hedges handcuffed him.

During the search of Moore's vehicle, Hedges found an empty package labeled "syringes" on the passenger side floorboard. As Hedges examined the toolbox in the truck's bed, the odor of anhydrous ammonia became stronger. Inside the toolbox, Hedges found a propane tank wrapped in a t-shirt. The tank's brass fittings had turned blue, consistent with the corrosive effect of anhydrous ammonia on brass. Hedges then *Mirandized* Moore, and Moore agreed to speak to him. Moore denied the presence of anhydrous ammonia or chemicals in the truck and told Hedges he was headed to a campsite belonging to his aunt and uncle.

At Deputy Hedges' direction, Ranger Ostlund then left to locate the campsite. Ostlund discovered that Moore had obtained a camping permit in Moore's name, which was affixed to a camper parked in Heimerman Point. Ostlund detected a chemical odor emanating from the camper parked at the site, and search warrants were then obtained for the camper, the campsite, and Moore's truck. Hedges also obtained a destruction warrant permitting the officers to destroy any hazardous materials discovered in the search.

More than 25 items associated with the manufacture of methamphetamine were discovered in the pickup, in the camper, and at the campsite. Moore was charged with the manufacture of methamphetamine; attempted manufacture of methamphetamine; possession of ephedrine or pseudoephedrine; possession of anhydrous ammonia or pressurized ammonia; possession of lithium metal; possession of drug paraphernalia; and possession of methamphetamine.

Moore filed a motion to suppress the evidence discovered in the search of the campsite, camper, and truck, alleging the initial stop was unlawful and the items discovered were the fruit of the unlawful stop. The district court denied the motion, finding the stop was

lawful based upon Deputy Hedge's testimony regarding Moore's weaving and jerking within his lane and his concern that Moore was DUI. Citing *State v. Field*, 252 Kan. 657, 847 P.2d 1280 (1993), the district court found that these concerns, standing alone, were sufficient to justify the stop. Nevertheless, the court held that Moore's failure to properly signal a turn provided a further basis for the stop.

Following a jury trial, Moore was found guilty of all charges. Moore was sentenced to concurrent sentences of 162 months' imprisonment each for the manufacturing and attempted manufacturing convictions, which were to be served consecutive to the concurrent sentences of 11 months each on the five possession convictions. Moore appeals his convictions and sentences.

## A. *Denial of Motion to Suppress*

Moore first challenges the denial of his motion to suppress, alleging the initial stop was not lawful as Moore committed no traffic violations. Specifically, Moore alleges Deputy Hedges' suspicion of DUI was "unfounded given the unlit and unmarked roadway in which the asphalt blended into the grass." Further, Moore alleges that the stop based upon Moore's failure to signal within 100 feet of his turn was not a "legitimate traffic stop."

### 1. *Jurisdiction*

Initially, the State claims Moore failed to preserve the issues he now raises regarding the district court's failure to suppress evidence as Moore failed to contemporaneously object to the admission of the various items of evidence at trial. Moore concedes he did not object contemporaneously to each item of evidence; however, he points out he renewed his motion to suppress evidence on two occasions—after the court dismissed the venire panel and again after voir dire. Further, following voir dire, Moore objected to the admission of his pre-*Miranda* statement.

The State contends Moore's actions were not sufficient to comply with K.S.A. 60-404, which requires a party to contemporaneously object or lodge a continuing objection to the admission of evidence. However, we find Moore's two renewals of his suppres-

sion motion were obvious attempts to preserve these issues for appeal. See *State v. Winston*, 281 Kan. 1114, 1126, 135 P.3d 1072 (2006) (considering the defendant's argument on appeal despite defendant's failure to contemporaneously object or lodge a continuing objection because the objections were "obvious attempts to renew the pretrial . . . objection"). Therefore, the issues raised by Moore concerning the denial of his suppression motion are properly before us.

### 2. *Standard of review*

Appellate review of a suppression ruling is a mixed question of fact and law. We review a district court's factual findings for substantial competent evidence, but the ultimate determination concerning the suppression of evidence is a question of law over which we have unlimited review. *State v. Alvidrez*, 271 Kan. 143, 145, 20 P.3d 1264 (2001). Where the material facts necessary to resolve the suppression issue are not disputed, however, we possess unlimited review. *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003).

### 3. *Suspicion of DUI*

"[T]o stop a moving vehicle an officer must have articulable facts sufficient to constitute reasonable suspicion under K.S.A. 22-2402 and *Terry* [*v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)]. [Citation omitted.]" *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991).

The facts here support a finding that Deputy Hedges had reasonable suspicion to believe Moore was DUI. Hedges observed Moore, who was driving 20 miles per hour in a 30-mile-per-hour zone, weave within his lane and make jerking corrections on five occasions. On the final occasion, Moore's passenger-side tires briefly touched the grass on the right side of the road. Hedges testified these actions caused him to believe that Moore may have been DUI.

On appeal, Moore does not challenge Hedges' factual assertions. Rather, he contends that given the driving conditions, Deputy Hedges' DUI suspicion was unreasonable. Moore points out that

the road was dark, unlit, and lacked a center line stripe or white fog line.

Appropriately, the district court cited *Field*, 252 Kan. at 657, to support its determination that the stop was lawful. In *Field*, the court upheld a traffic stop where the officer observed the defendant weaving within his lane on four occasions over the course of 11 blocks. 252 Kan. at 658. While Moore attempts to distinguish this case based upon the road conditions, the *Field* court made no such distinctions. We agree with the district court that Deputy Hedges had reasonable suspicion to believe Moore was DUI and lawfully stopped Moore's vehicle based upon that suspicion.

Because we conclude the stop was lawful based upon Deputy Hedges' suspicion that Moore was DUI, we need not consider Moore's arguments concerning the lawfulness of the stop based upon his failure to utilize his turn signal.

### 4. Expansion of scope of stop

Moore next contends that even if the initial stop was based upon reasonable suspicion, Deputy Hedges exceeded the scope of the stop when he detained Moore after dispelling any suspicions of DUI and beyond the time necessary to issue citations for an improper turn and expired license.

An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. *State v. Mitchell*. 265 Kan. 238, 245, 960 P.2d 200 (1998). Whether the length of detention is reasonable is a question of law over which this court has unlimited review. *Boyd*, 275 Kan. at 271.

In contending the scope of the stop was unreasonably expanded, Moore relies upon *State v. Schneider*, 32 Kan. App. 2d 258, 80 P.3d 1184 (2003). There, officers stopped the defendant approximately 15 miles from the location in which he allegedly failed to signal a turn. Drug task force investigators then questioned the defendant about cold pills he recently purchased but did not ask for his license or proof of insurance. This court found the detention went beyond what was necessary to effectuate the traffic stop. 32 Kan. App. 2d at 263.

In contrast, in this case Deputy Hedges immediately stopped Moore's vehicle after observing him weave within his lane and fail to utilize his traffic signal. As Hedges approached the vehicle, he detected the odor of ether and anhydrous ammonia. And, as Moore searched for his proof of insurance after producing an expired license, Hedges observed several additional items in the truck confirming Hedges' already strong suspicion that Moore was involved in the manufacture of methamphetamine, including an open package of lithium batteries, Coleman fuel, and two cans of starter fluid.

Under these circumstances, we have no hesitation in concluding Deputy Hedges did not unreasonably detain Moore beyond the scope of the stop.

### 5. *Existence of probable cause to search vehicle*

Next, Moore asserts the district court erred in finding Deputy Hedges had probable cause to conduct a warrantless search of his truck.

"Where the facts material to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which [an appellate] court has unlimited review. [Citation omitted.]" *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006).

"Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. [Citation omitted.] . . . To determine whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences drawn therefrom, and any other relevant facts, even if they may not be admissible at trial. [Citation omitted.] We view the totality of the circumstances by evaluating the information from the standpoint of an objectively reasonable police officer. [Citation omitted.]" *State v. Hill*, 281 Kan. 136, 146, 130 P.3d 1 (2006).

Moore suggests that the odor of ether was insufficient to establish probable cause, particularly because ether is a substance which one might expect to find at a campground. See *State v. Blair*, 31 Kan. App. 2d 202, 208, 62 P.3d 661 (2002). However, the odor of ether was only one factor relied upon to establish probable cause in this case. See *State v. Fisher*, 283 Kan. 272, 305, 154 P.3d 455

(2007) (smell of ether "may be considered with other evidence . . . in the totality of the circumstances for determining whether probable cause exists").

Deputy Hedges was an experienced law enforcement officer who had been involved in the investigation of approximately 10 methamphetamine labs. He detected, and another officer confirmed, the odor of both ether and anhydrous ammonia emanating from Moore's truck. Deputy Hedges testified that ether and anhydrous ammonia are used to manufacture methamphetamine. Further, Deputy Hedges observed a can of Coleman fuel and two cans of lighter fluid in the bed of Moore's truck and an open package of lithium batteries in the seat of the truck—all items commonly used in the production of methamphetamine.

Moore argues the discovery of these additional items also was not indicative of criminal activity because Moore was at a campground—a location where these items might commonly be found. Nevertheless, in considering whether probable cause existed, we do not view the discovery of these items in an isolated or singular fashion. Rather, we review the totality of the circumstances, noting that " ' "innocent behavior frequently will provide a showing of probable cause." ' " *Fisher*, 283 Kan. at 305. Moreover, as the district court noted, anhydrous ammonia is not a chemical normally used at a campground.

Based on the totality of the circumstances, we conclude Deputy Hedges had probable cause to search Moore's truck based upon his suspicion that Moore was engaged in manufacturing methamphetamine.

### 6. *Pre-Miranda statement*

Moore also objects to the district court's failure to suppress a statement he made to Deputy Hedges prior to being *Mirandized*. Moore points out that after Deputy Hedges learned from dispatch that Moore's driver's license was expired, he returned to Moore's truck and asked Moore where he was going. Moore responded that he was going to his camper at Heimerman Point. Moore claims the trial court should have suppressed this pre-*Miranda* statement because it was elicited while he was under custodial interrogation.

The State responds that this inquiry was an appropriate question which occurred during an investigative detention.

"[T]he appellate court reviews the factual underpinnings of a district court's decision that the defendant was not in custody by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. The determination is made based upon a totality of the circumstances applying the objective standard of a reasonable person. [Citations omitted.]" *State v. Washington*, 275 Kan. 644, 661, 68 P.3d 134 (2003).

Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602, *reh. denied* 385 U.S. 890 (1966), law enforcement officers must inform suspects of their *Miranda* rights before initiating custodial interrogations. However, statements made during a traffic stop are not subject to the *Miranda* requirement. *Berkemer v. McCarty*, 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984). During a traffic stop an officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." 468 U.S. at 439.

K.S.A. 22-2402(1) also permits officers to question a driver during the course of a traffic stop. That section provides: "Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions."

Here, Deputy Hedges' question was logically related to the reasons for which he stopped Moore and to his discovery and follow-up regarding Moore's expired license. Thus, we conclude Deputy Hedges' pre-*Miranda* question was made during the course of the traffic stop and not during a custodial interrogation. The district court therefore did not err in denying Moore's motion to suppress the statement.

## B. Denial of Motion for New Trial

Moore next claims the district court erred in denying his motion for new trial based upon an event that Moore claims shows the jury was not impartial. Moore also claims the court erroneously

denied his new trial motion because the trial court conducted ex parte communications with the jury about this event.

The facts relating to this issue are quite confusing, but we discern from the record that just prior to the reading of the verdict, the trial court advised the parties and others present in the courtroom that the jury was delayed in returning to the courtroom based upon a concern that a spectator might be using a cell phone camera in the courtroom. The court questioned all those present as to whether anyone had taken photographs inside the courtroom. After receiving only negative responses, the trial judge ordered the bailiff to bring in the jury. The jury was brought in, the verdict was read, and the jury was released after the court advised the jurors that it would speak to them briefly in the jury room.

At sentencing, the issue again was discussed. The trial court clarified that it had discussed the camera concern with the jurors, and the jurors advised the court they were not concerned about a camera phone in the courtroom. In fact, the trial court indicated it was the bailiff, not the jury, that had expressed the concern. Further, according to the trial court, the jurors confirmed that the cell phone camera issue did not affect their verdict and that they found the evidence against Moore to be overwhelming. Based on its conversation with the jury, the trial court determined Moore was not prejudiced because this issue did not affect the jury's decision.

Moore now claims that the trial court improperly communicated with the jury about its concerns outside of the defendant's presence. Further, without citation to the record, Moore asserts that the jury "clearly felt threatened, or at least angered, by the incident." Moore complains that by failing to inform the parties of the jury's concern at the time the concern was voiced, the district court negated any opportunity the parties might have had to inquire into the effect of the jury's concerns. Thus, Moore claims his motion for new trial should have been granted.

We review the denial of a motion for new trial for an abuse of discretion. *State v. Mathis*, 281 Kan. 99, 103, 130 P.3d 14 (2006). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then the trial court

did not abuse its discretion. *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006).

We find no evidence to support Moore's suggestion that this incident somehow affected the jury's verdict, and in fact, the evidence indicates otherwise. Further, although Moore points out that the jury refused to speak with his trial counsel following the trial, we note that the jurors were specifically instructed that they could choose whether to speak to anyone about the trial after the case had concluded.

Moore also claims the trial judge conducted improper ex parte communications with the jury when he spoke with it regarding the cell phone camera. However, Moore failed to raise this issue below. Issues not raised before the trial court cannot be raised on appeal. *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007).

A review of the record indicates that the trial court's actions in addressing this issue were not arbitrary, fanciful, or unreasonable, and the district court did not err in denying Moore's motion for new trial.

## C. Admission of Moore's Prior Convictions

Moore's argument on this issue is convoluted. On the one hand, he claims in his issue statement that the district court erred in admitting prior conviction evidence. However, in his brief he focuses on an instruction given to the jury, PIK Crim. 3d 67.13-D, and argues that instruction conflicts with K.S.A. 60-455.

PIK Crim. 3d 67.13-D lists several factors a jury may consider when determining whether a defendant was in possession of a controlled substance, including the defendant's use of controlled substances. K.S.A. 60-455 governs the admissibility of prior bad acts evidence. Ultimately, it appears Moore challenges the admission of prior conviction evidence to prove possession.

When reviewing a district court's decision to admit or exclude evidence, we must first determine whether the evidence is relevant. Once relevance is established, we apply the evidentiary rules governing the admission and exclusion of evidence as a matter of law or in the exercise of the district court's discretion, depending on the contours of the evidentiary rule question. When the issue

involves the adequacy of the legal basis for the district court's decision, appellate courts apply a de novo standard. *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006); see K.S.A. 60-407(f).

In this case, the trial court informed the jury prior to closing arguments that on August 19, 2005, Moore was convicted of manufacturing methamphetamine, possession of anhydrous ammonia with intent to manufacture methamphetamine, possession of methamphetamine, and possession of drug paraphernalia with intent to manufacture methamphetamine. The trial court admitted this prior conviction evidence independent of K.S.A. 60-455, on the ground that the defendant's theory of defense was that the public had access to the trailer and, thus, possession was at issue in the case.

*Gunby*, 282 Kan. at 57, however, held that all prior conviction evidence must be considered for admission at trial pursuant to K.S.A. 60-455, which provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

In order to determine if evidence is admissible under K.S.A. 60-455, a court must determine whether the evidence is relevant and whether the probative value of the evidence outweighs the prejudicial effect. *Gunby*, 282 Kan. at 57. If a trial court admits prior conviction evidence, the court must also give a limiting instruction. 282 Kan. at 57. A trial court's failure to conduct these specific inquiries or to give a limiting instruction, however, does not require an automatic reversal. 282 Kan. at 57-59. Rather, we must determine whether the failure to follow K.S.A. 60-455 resulted in harmless error. 282 Kan. at 57-59.

Moore claims that the admission of prior convictions to prove possession in nonexclusive possession cases constitutes a "per se" violation of K.S.A. 60-455. However, our Supreme Court rejected this suggestion in *State v. Faulkner*, 220 Kan. 153, 156-57, 551 P.2d 1247 (1976). There, the court held that in nonexclusive pos-

session cases, evidence of prior bad acts is admissible to show knowledge, intent, and absence of mistake under K.S.A. 60-455 as long as these issues are disputed and the probative value of the evidence outweighs it potential prejudice. 220 Kan. at 158; see *State v. Castillo,* 34 Kan. App. 2d 169, 170-74, 115 P.3d 787, *rev. denied* 280 Kan. 985 (2005) (discussing K.S.A. 60-455, knowledge and intent, and the holding in *Faulkner*). We therefore conclude that prior conviction evidence to prove possession in nonexclusive possession cases does not, per se, violate K.S.A. 60-455.

Further, Moore's prior convictions were relevant because Moore made knowledge a disputed issue. Moore's theory of defense was that the trailer was accessible to the public and, consequently, the items in the trailer could have belonged to someone other than Moore. See *Faulkner,* 220 Kan. at 156 (noting that "[k]nowledge signifies awareness"). The prior conviction evidence was critical to allow the State to show that Moore was aware that the methamphetamine and paraphernalia were in the trailer.

Moore contends the holding in *Faulkner* was refined by *State v. Graham,* 244 Kan. 194, 197-98, 768 P.2d 259 (1989), and that prior convictions are inadmissible if a defendant claims his acts were innocent. *Graham,* however, does not support Moore's broad assertion. Rather, that case indicates that prior crimes evidence is irrelevant to show intent when the actual "doing of the act" is sufficient to infer intent. 244 Kan. at 198. However, when knowledge is at issue, prior crimes evidence remains relevant. 244 Kan. at 196-98; see *State v. Tolson,* 274 Kan. 558, 56 P.3d 279 (2002); *State v. Saunders,* No. 94,672, unpublished opinion filed May 4, 2007, slip op. 5-7 (noting that prior convictions are relevant when possession and intent are at issue.)

Further, the probative value of the prior convictions was substantial given Moore's theory of defense that the items found in the trailer belonged to someone else. See *Faulkner,* 220 Kan. at 158 ("prior convictions evidencing the requisite intent may be very probative"). Although any prior conviction evidence is prejudicial, given the nature of Moore's defense and the prophylactic limiting instruction given by the trial court, we conclude the probative value of the evidence was not outweighed by its prejudicial effect. Con-

sequently, the trial court did not err in admitting Moore's prior methamphetamine-related convictions.

Finally, even if it was error to admit the prior conviction evidence, it was harmless error. In *Gunby*, the court noted that if prior conviction evidence is improperly admitted, we must nevertheless determine whether its admission was harmless. 282 Kan. at 57-59. In making this determination, we must scrutinize each case individually and view the issue in light of the trial record as a whole. Reversal is required only where the erroneous admission of evidence affects the outcome of the trial and denies substantial justice. *State v. Garcia*, 282 Kan. 252, 270, 144 P.3d 684 (2006).

Here, the evidence against Moore was overwhelming. The officer discovered numerous items in Moore's truck consistent with the manufacturing process, including a jug containing methamphetamine as well as the many items discussed above. Officers also seized numerous items from the trailer consistent with the manufacturing process including bottles containing a rocky substance and tubing, coffee filters with residue, a bag of plastic tubing, four boxes of Sudafed, several glass jars containing sludge or a clear liquid, a can containing powder and liquid, a can of denatured alcohol, and a Coleman fuel can. Samples collected from these items confirmed they contained methamphetamine in various stages of production.

We note that even absent the admission of Moore's prior convictions, the evidence linking Moore to the trailer was overwhelming. Moore informed officers he was going to his camper at Heimerman Point; officers discovered a camping permit with Moore's name on it affixed to the window of the trailer and a plastic bag with a note addressed to Moore in a burn pit outside of the trailer. The bag contained peeled lithium batteries, casings, and empty pseudoephedrine wrappers.

Under these circumstances, we conclude that any error in admitting Moore's prior convictions was harmless.

### D. Violation of Sequestration Order

Moore's next issue on appeal concerns the alleged violation of a sequestration order at trial.

Prior to the commencement of trial, the trial court granted Moore's sequestration request. However, following Deputy Hedges' testimony but prior to Ranger Ostlund's testimony, Moore alleged the sequestration order had been violated when Hedges and Ostlund had a conversation on a break outside the courtroom. Moore did not seek a mistrial but, rather, requested Ostlund be prohibited from testifying.

Outside the presence of the jury, the trial court conducted a hearing on Moore's request, in which Ostlund testified he was not present during Deputy Hedges' testimony, but that during a break he spoke to Hedges about the fact that Hedges' testimony was proceeding slowly, that Hedges had already testified about the car stop, and that Moore took notes during Hedges' testimony.

The district court found that although the officers did have a conversation, they did not discuss the substance of Deputy Hedges' testimony and no violation of the sequestration order occurred. On appeal, Moore contends the district court erred in finding the order was not violated. Significantly, however, Moore does not suggest the violation of that order somehow prejudiced Moore.

We need not decide whether a technical violation of the order occurred since a violation of a sequestration order does not automatically disqualify a witness from testifying. Rather, in the absence of any showing of prejudice to the defendant, the trial court may in its discretion permit the witness to testify despite the violation. *State v. Johnson*, 258 Kan. 475, 491-92, 905 P.2d 94 (1995).

Here, Moore failed to argue below that any prejudice occurred as a result of the alleged violation of the order. Generally, issues not raised before the trial court cannot be raised on appeal. *Shopteese*, 283 Kan. at 339. Further, Moore does not suggest the officers' conversation violated the general purpose of sequestration, which is aimed at preventing "witnesses from tailoring their testimony to that of earlier witnesses and detecting testimony that is less than candid." *State v. Heath*, 264 Kan. 557, 589, 957 P.2d 449 (1998).

Because Moore did not allege prejudice in the trial court, nor does he do so on appeal, we conclude the district court did not abuse its discretion in permitting Ostlund to testify.

### E. Cumulative Trial Errors

Moore next urges us to overturn his convictions based upon cumulative error.

" 'Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant. [Citation omitted.]' " *State v. Davis*, 283 Kan. 569, 583, 158 P.3d 317 (2007) (quoting *State v. Ackward*, 281 Kan. 2, 29, 128 P.3d 382 [2006]).

Cumulative error will not be found when the record fails to support the errors raised on appeal by the defendant. *Davis*, 283 Kan. at 583; *State v. Jones*, 283 Kan. 186, 218, 151 P.3d 22 (2007). One error is insufficient to support reversal under the cumulative effect rule. *State v. Anthony*, 282 Kan. 201, 217, 145 P.3d 1 (2006).

In this case, Moore has failed to demonstrate trial error. Further, as discussed above, the evidence against Moore was overwhelming, negating any possible claim of prejudice.

### F. Identical Offense Doctrine

Moore was convicted, *inter alia*, of manufacturing methamphetamine in violation of K.S.A. 65-4159, a severity level 1 drug offense, and possession of drug paraphernalia with the intent to manufacture methamphetamine in violation of K.S.A. 65-4152(a)(3), a severity level 4 drug offense. Moore appeals his sentences claiming that manufacturing methamphetamine and possession of drug paraphernalia with intent to manufacture are identical offenses, and consequently, his manufacturing offense should be classified as a severity level 4 drug felony rather than a severity level 1 drug felony. Moore's argument is based on the principal that where two statutes with differing penalties proscribe identical conduct, a criminal defendant may be sentenced only to the lesser of the two penalties. *State v. McAdam*, 277 Kan. 136, Syl. ¶ 3, 83 P.3d 161 (2004).

K.S.A. 65-4159(a) provides that "it shall be unlawful for any person to manufacture any controlled substance . . . ." Methamphetamine is a controlled substance. K.S.A. 65-4107(d).

K.S.A. 65-4152(a) states that "[n]o person shall use or possess with intent to use . . . (3) any drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, sell or distribute a controlled substance in violation of the uniform controlled substances act."

Moore's argument requires the interpretation of statutes and thus presents a question of law over which our review is unlimited. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

The State points out that Moore failed to raise this issue below. Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Rojas*, 280 Kan. 931, 932, 127 P.3d 247 (2006). Nevertheless, K.S.A. 21-4721(e)(3) permits us to review a claim that the sentencing court erred in ranking the crime severity level. *State v. Fanning*, 281 Kan. 1176, 1178, 135 P.3d 1067 (2006). Thus, we may reach the merits of this issue.

The issue raised by Moore here was addressed by our Supreme Court in *Fanning*. There, the defendant argued that attempted manufacture is an identical offense to possession of drug paraphernalia with intent to manufacture because "the term 'use' in K.S.A. 65-4152(a)(2) is equivalent to the term 'manufacture' in K.S.A. 65-4159." 281 Kan. at 1183. The *Fanning* court pointed out that the elements of the two offenses are not "completely identical." 281 Kan. at 1183. Nevertheless, the court directed that, in resolving identical offense issues, courts must consider "the underlying facts in relation to the statutory elements to determine whether the offenses are identical." 281 Kan. at 1183.

Despite this direction, the court in *Fanning* did not apply the facts in resolving whether the offenses were identical because the court found the record contained "no facts to establish that Fanning actually *used* the paraphernalia for any reason." (Emphasis added.) 281 Kan. at 1183-84. The court concluded that attempted manufacture of methamphetamine and possession of drug paraphernalia with intent to manufacture methamphetamine were not identical offenses and affirmed Fanning's sentence. 281 Kan. at 1184.

This court has sometimes struggled with the application of *Fanning*. However, generally, we have concluded that where the record contains evidence that the defendant actually *used* paraphernalia, manufacturing and possession of drug paraphernalia are identical offenses for sentencing purposes. See, *e.g.*, *State v. Thompson*, No. 94,254, unpublished opinion filed Jan. 11, 2008, slip op. 14; *State v. Allen*, No. 95, 628, unpublished opinion filed Nov. 21, 2007, slip op. 6-9; *State v. Bethe*, No. 96,020, unpublished opinion filed May 25, 2007, slip op. 8.

Recently, in *State v. Cooper*, 285 Kan. 964, 966, 179 P.3d 439 (2008), the court cited *Fanning* for the conclusion that "[o]ffenses are identical when they have the same elements." Nevertheless, the court reiterated its conclusion in *Fanning* that "for sentencing purposes, an appellate court must consider the statutory elements in conjunction with the underlying facts." 285 Kan. at 966. Finally, the court stated the "governing principle of the identical offense doctrine" as: " 'Where two criminal offenses *have identical elements* but are classified differently for purposes of imposing a penalty, a defendant convicted of either crime may be sentenced only under the lesser penalty provision.' " 285 Kan. at 966-67 (quoting *State v. Nunn*, 244 Kan. 207, 229, 768 P.2d 268 [1989]).

*Cooper* concludes that K.S.A. 65-4159(a), which defines the crime of manufacture of methamphetamine, and K.S.A. 65-4152(a)(3), which defines the crime of use of drug paraphernalia, do not have identical elements because nothing in the former statute requires the State to prove, as does the latter statute, that a defendant used drug paraphernalia to manufacture methamphetamine. 285 Kan. at 967.

Curiously, despite *Cooper*'s initial reaffirmation of *Fanning*'s conclusion that the underlying facts must be considered in determining whether offenses are identical for sentencing purposes, the court then appears to back off of that conclusion without expressly rejecting or overturning *Fanning*:

"Although, as a factual matter, paraphernalia must have been used to manufacture methamphetamine, the State is not required to prove this fact. For example, the State could present a witness who would testify, 'I watched the defendant manufacture methamphetamine.' A defendant might also confess, 'I manufactured

methamphetamine.' In either such case, the State would have established a prima facie case and would not be required to prove how that manufacturing occurred or that any paraphernalia was used in the process. Even if the evidence described the scientific process and *circumstantially established that paraphernalia had been used* in the process, the jury *would not be instructed that it* must find beyond a reasonable doubt that the defendant possessed paraphernalia for the purpose of manufacturing methamphetamine." 285 Kan. at 967 (Emphasis added.)

We read *Cooper* to hold that as long as the elements of the two crimes at issue are not identical and the jury is clearly instructed as to the elements of each crime as defined by the charging document, the underlying facts proven by the State are not controlling in determining whether crimes are identical for sentencing purposes. Rather, according to *Cooper*, we examine the facts only to determine the areas in which two statutes overlap. "Once it is determined which provisions of a statute apply, the only question is whether the overlapping provisions contain identical elements." 285 Kan. at 967.

Turning now to the facts of the present case, Moore points out that the evidence clearly established that he actually used multiple items of paraphernalia to manufacture methamphetamine and that based on the application of the facts to the elements of the crime, manufacturing methamphetamine and possession of paraphernalia with the intent to manufacture methamphetamine are identical offenses. Thus, Moore reasons that for sentencing purposes, his manufacturing conviction should have been classified as a severity level 4 offense rather than a severity level 1 offense.

Based on *Cooper*, we are constrained to reject this argument. The two statutes at issue here—K.S.A. 65-4159(a) and K.S.A. 65-4152(a)(3)—may overlap factually, but they do not have identical elements, and the jury was instructed as to the distinct elements of each crime as defined in the complaint. Accordingly, we reject Moore's argument that the two offenses were identical for sentencing purposes.

### G. *Cross-appeal: Should Moore Have Been Sentenced Pursuant to K.S.A. 21-4705(e)?*

On August 19, 2005, while the present case was pending, Moore was convicted of manufacture of methamphetamine resulting from

a prior incident. In its cross-appeal, the State contends the district court erred in failing to sentence Moore pursuant to K.S.A. 21-4705(e), which requires that when a defendant is sentenced for a second or subsequent K.S.A. 65-4159 conviction, the presumptive term of imprisonment is twice the maximum duration of the defendant's normal presumptive prison term. Citing due process concerns, the trial court declined to sentence Moore pursuant to K.S.A. 21-4705(e) because the State failed to indicate on the charging document that Moore was subject to the statute.

Moore claims that this issue is not properly before the court because the State failed to contemporaneously object pursuant to K.S.A. 60-404 at the sentencing hearing. This issue, however, does not concern the admission of evidence, and K.S.A. 60-404 does not apply.

Further, contrary to Moore's suggestion, the State properly preserved this issue for appeal as its notice of cross-appeal indicates the State appeals Moore's sentence on the basis of K.S.A. 21-4705. Thus, the notice complied with K.S.A. 60-2103(b) which requires the notice to "specify the parties taking the appeal; . . . designate the judgment or part thereof appealed from, and . . . name the appellate court to which the appeal is taken."

Because this issue involves interpretation of a statute, our review is unlimited. See *State v. de la Cerda*, 279 Kan. 408, Syl. ¶ 1, 109 P.3d 1248 (2005).

K.S.A. 21-4705(e) states:

"The sentence for a second or subsequent conviction of K.S.A. 65-4159 and amendments thereto . . . shall be a presumptive term of imprisonment of two times the maximum duration of the presumptive term of imprisonment. The court may impose an optional reduction in such sentence of not to exceed 50% of the mandatory increase . . . upon making a finding on the record that one or more of the mitigating factors as specified in K.S.A. 21-4716 and amendments thereto justify such a reduction in sentence."

Moore claims his due process rights would be violated if he were to be sentenced pursuant to K.S.A. 21-4705(e) because the State failed to give him notice that K.S.A. 21-4705(e) would apply in this case. In support, Moore cites *State v. Moody*, 282 Kan. 181, 144

P.3d 612 (2006), and *State v. Masterson*, 261 Kan. 158, 929 P.2d 127 (1996).

Moore's reliance on these two DUI cases is misplaced. Both *Moody* and *Masterson* focused on the statutory increase to the severity level of a current conviction which results from a prior DUI conviction. *Moody*, 282 Kan. at 188-92; *Masterson*, 261 Kan. at 161-64.

In contrast, K.S.A. 21-4705(e) does not alter the severity level classification, nor does it make proof of the prior conviction an element of the crime. Additionally, Moore was aware, prior to sentencing, that he had a prior conviction for manufacturing methamphetamine. Thus, Moore's due process claim fails. See *State v. Rummel*, No. 95,683, unpublished opinion filed May 4, 2007, slip op. 10-11 (holding that a defendant's due process rights were not violated when a prior conviction did not alter the severity level of the crime).

Moore further contends that his prior conviction cannot serve as the basis for application of K.S.A. 21-4705(e) because the acts in the present case occurred on July 23, 2004, and Moore was not sentenced for the prior offense until August 19, 2005. Moore suggests that pursuant to *State v. Wilson*, 6 Kan. App. 2d 302, 306, 627 P.2d 1185 (1981), it is "necessary that each succeeding offense be committed after the conviction for the proceeding offense."

Moore's argument, however, is contrary to the specific language of K.S.A. 21-4710(a), which provides that "[a] prior conviction is any conviction . . . which occurred prior to sentencing in the current case regardless of whether the offense that led to the prior conviction occurred before or after the current offense or the conviction in the current case." Because Moore's prior conviction occurred prior to his sentencing in this case, Moore should have been sentenced as a second or subsequent offender under K.S.A. 21-4705(e).

Finally, Moore claims his sentence is not appealable because it complies with the statute. Moore points out that he was sentenced to 162 months' imprisonment and the statute permits the district court to impose an optional reduction. However, K.S.A. 21-4705(a) requires that the maximum presumptive sentence, 170 months, be

doubled before the district court can impose an optional reduction not to exceed 50 percent of the mandatory increase. Even if the district court imposes the maximum reduction, Moore would be sentenced to a minimum of 255 months (*i.e.*, 170 + 170 = 340; 340 - 85 [50 percent of 170] = 255). Moreover, because the district court here erroneously found the statute did not apply, the court did not make findings to justify the reduction.

Accordingly, we reverse the sentence imposed and remand for resentencing pursuant to K.S.A. 21-4705(e). On remand, the district court may, in its discretion and consistent with the statute, consider imposing a reduction in sentence pursuant to the statute.

Affirmed in part, reversed in part, and remanded with directions.